I called I.T. and had them come. I just wasn't sure. All right. Our next case is 2019-1646 Nichia v. Iancu. Mr. Saltyk, please proceed. Thank you, Your Honors. May it please the Court, my name is Marty Saltyk and I, along with my colleague Michael Jones, represent the patent owner, Nichia. Thank you. The LED device in Claim 17, like the process of Claim 1, is patentable. Now, the Board correctly found that the process was novel and not obvious, but it erred when it held that the product of that invented process would have been obvious. And here, instead of providing a reasoned decision with explanation and specificity and evidence required by this Court and required by the APA, the Board used the 250 patent as a roadmap when it took the position that Part 697 and OSIO would be combined to show this resident overplating limitation of Claim 17. And if I could ask the Court to look at page 23 of our blue brief, that has the figure of the LED device of Claim 17. And it shows, it's annotated in color to show the plating on the upper surface and the bottom surface of the leads. And on the bottom surface of the lead is the green plating, and then on the top surface there's two portions. One is blue, and that's for reflection, and then there's the red. And the red is the resident overplating limitation of Claim 17 that's at issue here and that I'm talking about. And because the process which allowed that resident overplating wasn't in the prior art, it was new, the product of that process that had this resident overplating or the plating covered by the resident also wasn't in the prior art. The Board's hindsight reading of this OSIO reference to show this, to argue this or allege the resident overplating was error. And I want to address two issues to start. The first is the APA issue. I don't even know if this is a sensible question. The little bit of red overplating, is that serving any function or is it just a kind of a useless byproduct of a process that is extremely efficient? It's a result of the process, but the issue for this case is it doesn't perform the functions that OSIO was talking about. The OSIO reference was talking about plating for two reasons, increasing reflection and increasing the bonding strength. Now, if you look at this figure, the blue part that's in this reflective cup, that is going to do the reflecting. The green part which is on the bottom is going to do the solder bonding. The red part, the resident overplating, that plating there does not serve either of those functions. Doesn't that strengthen the bonding? It doesn't actually strengthen the bonding vis-a-vis the prior art. The reason the bonding, not the bonding, but the adhesion is improved is because of the notches that the 250 patent disclosed, the notches in the lead frame. That's why in the 250 you were able to plate the entire surface of the lead. But doesn't OSIO teach plating that particular surface in order to improve adhesion? Which reference, your honor? OSIO. No. OSIO does not teach plating under resin. OSIO teaches plating for two reasons. Number one, to increase reflection, which is that blue part on the top. And maybe if I can direct the court to page 52 of the blue brief, there's the corresponding picture of the OSIO LED device. What OSIO was talking about, or disclosing and describing, and this is also in the Joint Appendix 741, which has the language, specific language of OSIO. Let's see if I understand your argument. Your argument is that OSIO disclosed desirability of coating in certain places for reflective purposes, but not the entire surface because not all of it was reflective. But what do you do with the fact that this is a substantial evidence question, and Dr. Shanfield opined that a POSA would understand the word coating the surfaces, the pair of leads 20 and 30 being plated, in OSIO, that language from OSIO. He said a person with skilled merit would understand that as coating the entire surface of leads 20 and 30, which includes the portion you have in red in your picture. And how, I mean, this is a substantial evidence question. You've got testimony that someone would understand that reference as resulting in the entire thing being coated, even though some portion of that would not serve the function of reflective. Two points. Dr. Shanfield's testimony about the meaning of coating is conclusory, and conclusory testimony of an expert cannot support the substantial evidence standard. So that's one, TQ Delta, other cases, that's one reason. The second reason is that you have to look at paragraph 69 of the reference itself. And if you look at paragraph 69 of the reference in that discussion of coating, it says coating its surface by the page. What page? It's 741 of the appendix. And to point out, in the board's decision, that's solely what the board relied on. You're on paragraph 69? Yes, I am, Your Honor. Okay. And the sentence at issue is, coating its surface by plating or other process serves to increase the light reflectance at the sidewall of the cup-shaped recess 20C, and the bonding strength of solder on the rear face of the outer lead sections 20A and 30A, end of the lead 20, directly below the chip. And I go back to that figure on page 52 of the blue brief, which is what it's referring to. And OCO was very specific, not only about the function, reflection and bonding, but was very specific about the location. It referred to 20C. And if you look at that figure, 20C is that area in the reflection cup there. Can I just ask, why can't one read that language to say, coating, which might be coating the whole framework here, has the following three benefits. But that doesn't say we therefore will make the effort to limit the coating to those locations. Based on the language of OCO and the evidence in the record, it's not a plausible interpretation of OCO that the entire surface, top and bottom, would be coated. It doesn't serve, as we were talking about in the beginning, it doesn't even serve the function of reflection and increasing the solder bonding strength, because it's under resin, according to Claim 17. And in addition, I want to note that the testimony in the record is that if you did coat the entire surface, top and bottom, you would have problems. And the testimony I'm talking about has to do with reduced adhesion. So that number one, if you plated all the surfaces, if we looked at the bottom, for example, on page 52 of the blue brief, that bottom surface, it talked about 20A, 30A, and directly under the chip 10. If you plated the entire bottom surface of that lead, you would get something that's called misalignment. And OCO, if you look at page 62 of our blue brief, was very specific about this issue of alignment, and that these red circles, which we've shown around the solder bonding points in OCO on page 62 of our blue brief, line up with the substrate below, figure 19. And the testimony is that if that entire bottom surface was plated, you would have an alignment problem. If we go to the top surface, if that entire top surface was plated, what would happen would be something called peel-off. And peel-off, essentially, is when that resin coating on top peels off. So not only would it not improve reflection and improve solder bonding strength, it would actually harm it. It would make it worse. It would make it not work. So we don't think that Nietzsche doesn't believe that that is a plausible interpretation of the coating reference in paragraph 69 of OCO. One other point. What about claim one of the 250 patent? It uses a term, plating the lead frame. Doesn't that refer to painting or plating the entire surface? It does, Your Honor. And the reason that these problems that I just mentioned were not issues with the 250 patent invention is because of something called notches. And the board addressed when it was finding that the process was patentable and non-obvious, the notches. Where the resin actually goes through the notches and allows the appropriate adhesion between the resin body and the lead frame. And so that wasn't an issue in connection with the 250 patent. And it was why you could do it. Let me just, if I could, talk about the APA in this case. And this has to do with the board's treatment of motivation to combine and expectation of success. I'm talking about pages 48 and 49 of the joint appendix. That's where in this 50 plus page decision, the board actually addressed the motivation to combine. This is part 697 with Oshio. And I'm looking at the bottom of page 48. Plating the entire lead, or at least the upper surface and lower surface, would result in a lead that meets the limitations of claim 17. And my point is this next sentence. Figure 4 of Oshio illustrates a device similar to that described in part 697. Thus we are persuaded. That sentence about the similarity is all there is in this decision about the alleged motivation to combine part 697 and Oshio. There's nothing else in there about it. And we submit that that is not sufficient under this court's recent cases in the last few years about what an IPR PTAB decision has to have. It says, thus we are persuaded that petitioner has demonstrated a person of ordinary skill would have been motivated to combine the teachings that the teachings disclose the features. Earlier in the opinion at page 38, they actually articulate what they understand the petitioner's arguments regarding motivation to combine to be, which is not limited to figure 4 and the similarities. Do you believe that it would not be proper for us to realize, to interpret the thus we are persuaded the petitioner has demonstrated sentence to refer back to an adoption of the arguments at page 38? I think that that wasn't something they specifically addressed with respect to claim 17, number one. And number two, even if they did, as I previously explained, the issue of reflection and the issue of bonding strength, there's no evidence in the record that part 697, which is the reference that they were combining Oshio with, had any issue at all with reflection or any issue at all with respect to bonding. The board owed Nietzsche more in terms of an explanation as to why these supposed similarities, what they were and why they would mean a person of ordinary skill would be motivated, number one. And number two, there were differences between them. The board never addressed any differences between them and never really articulated how there would be any expectation of success in doing so. They didn't mention expectation of success at all. I see I'm into my rebuttal time. OK. We'll save the rest of it for you. And let's hear from the government. Thank you, Your Honor. Peter Sollert. May it please the court, Peter Sollert on behalf of the director of the USPTO. The patent owner, Ichiya, here has touted the benefits of its novel design process. And that theme, it runs throughout their brief to this court. The problem is that we're not here about the process claims. We're here about product claims. And those product claims have been drafted in such a manner that they are so broad that they cover an obvious combination of the prior art. That many of these novel aspects of the process they're pointing to, for example, notches, are not something that are part of the claim language of Claim 17. Having come from an electrical background myself, I would note as an example the breadth of the claim that it only requires at least one lead, which is, you know, really drafting the claim very broadly. Clearly, then, what we have to look for is the actual claim elements that are required for Claim 17, not process elements that were not claimed. And the sole element that's in dispute is this resin over plating limitation. The board found that Oshio clearly teaches fully plating the lead frame. And it does so when it refers to coating the surface of the lead frame. Which paragraph of Oshio is that? That is at Ace Appendix 741, paragraph 69. Okay, that's the paragraph we were talking about before. That's correct, Your Honor. The board also said there's no mention of spot plating anywhere in Oshio. So the combination of the fact that it teaches coating the surface, that phrase, plus the lack of any description of spot plating, even though Oshio contains description of the manufacturing process and doesn't mention a step for that, is clear disclosure that the lead frame is fully plated. That's also supported. Can I just ask? It seems to me that the other side makes two arguments and made two arguments to the board. One is what does Oshio teach? Put aside that argument. Focus for a minute on the second one. Let's suppose that Oshio does disclose coating all the surfaces. I think the other side makes an argument that says, nevertheless, there's a problem with a skilled artisan's, with the proof of the board's reasoning on a skilled artisan's, motivation to take that and add it to the park records. That's correct, Your Honor. What is that motivation? That's essentially the second argument. The director's first response on that point is that that argument has been waived because those are two separate arguments. The arguments below, and if you look at the points that are cited in the reply brief in particular, what Michie was arguing below was about what Park 697 and what Oshio disclosed. Let's look at page 329 of the appendix. This is the patent owner's response after the institution decision. Page 329. I'll wait for you to get that. Sorry, I have it, Your Honor. Patent owner's response after the institution decision. Petitioner notes Oshio provides motivation to combine as it discloses the advantages, blah, blah, blah, lots of quotes. However, Michie respectfully submits that Oshio is silent regarding plating the entirety of the lead. To the contrary, Oshio discloses planning two locations. Can that not be understood, that paragraph, as them contradicting the argument there is a motivation to make this combination? No, I don't believe so, Your Honor, because this is the same argument that's been made over and over about what Oshio teaches. But they never went the extra step of saying, OK, assuming that Oshio does teach whole plating, there's no motivation to combine, and making that separate next step in the argument. It's always about, well— OK, what about appendix page 1584, which is their expert report that they expressly rely upon? 1584, paragraph 226 of the expert report. They expressly rely on this memory. It seems to be directly on point. Right, but the premise of the entire argument is the first sentence there in paragraph 226 at appendix 15. A person of ordinary skill in the art would not have been motivated, based on Oshio, to modify park, to plate the entire lead frame on all surfaces, or to otherwise modify park, such that both the top and surfaces are plated, and the top surface is plated, such that the portion of the resin is disposed over a portion of the plating on the upper surface. Seems to be exactly the argument you say is waived, verbatim. But the preceding sentence, Your Honor, begins, A person of ordinary skill in the art, when viewing this reference, would understand that Oshio teaches spot plating. And then they go on to make the argument from there. So their argument is premised on that point. And I think that's confirmed by the fact that they don't give you a reason that, assuming Oshio is fully plated, that you wouldn't make this combination. A technical reason that that would be impossible. And not an economic reason. Not impossible. They don't have to go beyond impossible. I think their argument, at least this morning, is, yeah, there might be an advantage, but there are disadvantages. And we had expert testimony, which the Board didn't address, about why you wouldn't, basically, the disadvantages outweigh the advantages. That's correct, Your Honor. And that's exactly what the Board found after reviewing the expert testimony. So beginning at Appendix 37, roughly. I think Appendix 326 is, I think, another place in the Padnona response that expressly says, there are good reasons why a posita would not have been motivated to modify Art 697 to plate all surfaces of the lead frame. And these are arguments that are, I think, that do not assume away the possibility that Oshio teaches that. I would just ask, Your Honor, it's important to parse the record carefully, because there were multiple grounds before the Board below. And the first ground was obviousness over Part 697 alone, in which the petitioner argued that the full plating was just a design choice, so a single reference obviousness argument. And so some of these choices about statements about modifying PARC are made in that context, and not in the context of addressing the combination of PARC 697 and Oshio. But you agree that the ones I pointed to on 329 and later in the expert report are on the correct combination of projections, right? I believe that's correct, Your Honor. But just to return to the point, I believe those are premised on precisely the point I've been making about what Oshio teaches and how that would color someone looking to make a combination of Oshio and PARC 697. There's never a point where they sort of say, even if we're wrong about Oshio and it teaches this, then here's why you can't make this combination. And it's not required for obviousness that the combination be the highest or best. I guess one of the problems I have with your argument, even assuming that you were right, which I'll tell you I don't think you're right and I don't think it was waived, but even assuming you were right, it starts from the premise that you don't believe that the agency has an obligation to articulate the fact findings that lead to a conclusion of obviousness. Why is that? I don't believe that's true, Your Honor. The government has also argued that there's an adequate disclosure of motivation to combine. Do you believe that if there is an institution decision, and suppose the patent owner doesn't file a response, because as you know under the statute they're not even required to, right? Right? Yes. That's correct. So if the patent owner doesn't file a response, do you believe the absence of a patent owner response would allow the agency to just say invalid without the need to go through the steps and the fact findings necessary to support that? No, I don't, Your Honor. So if the patent owner's response happens to be silent on one of the prima facie points that must be established by the petitioner to prevail on obviousness, do you believe the board is therefore able to skip over that as though there's an admission that it is satisfied? No, I don't. Okay. I just wanted to make sure that I understood that we both agree the board is obligated to undertake the obviousness analysis and make the requisite fact findings, and the failure of a petitioner to have raised something in the response doesn't relieve the board of that obligation. That's correct, Your Honor. What I'm simply arguing is a more pragmatic point, which is the scope and depth of the board's treatment of that question is necessarily going to correspond to the amount of argument they receive. Where did the board treat this question? So it's beginning to say, so essentially beginning at Appendix 45, the board begins to review the opinions offered by both sides' experts, Dr. Schubert, Furnishia, and Dr. Shanfield, the petitioner, Vizio. And they go through how on multiple points about the plating, that the experts essentially don't agree on anything. And that discussion continues all the way over to Appendix 47. And there, in the first full paragraph, second sentence, the board says, the conflicting testimony of the expert witnesses indicates that there are advantages and disadvantages to both spot plating and plating the entire lead frame. In other words, either one is an acceptable design choice for plating the lead to achieve these identifiers. You think the fact that the board recognizes that there's conflicting expert testimony about advantages or disadvantages should be morphed into a fact-finding by the board that either of these are design choices, reasonable design choices? I believe so, Your Honor. So a recognition of conflicting expert testimony equates to a fact-finding that all of them are reasonable design choices? Well, not just that, but the fact that they specifically conclude that this conflicting testimony indicates that there are advantages and disadvantages to both spot plating and plating. That's a statement of design choice. You know what? I could list a million advantages to why my children could eat vegetables, and they could come up with one disadvantage. I hate the taste of them. Does that really equate to a reasonable conclusion that either one is a reasonable design option? No, Your Honor, but you can't judge that statement without the foregoing discussion that over the previous pages going through the arguments made on both sides. It's not 10 for one side and one for the other. It's roughly equal, and the experts don't agree on anything, and then the board doesn't find a particular reason. But I don't actually find any fact-finding in this sentence. I find this sentence to be a recognition of the fact that the parties introduced conflicting testimony. I would modify that slightly, Your Honor, as a fact-finding that the parties don't agree about what the advantages and disadvantages are, and each introduced supporting testimony, and that the board looked through that and recognized that that means there are design decisions to be made that involve trade-offs. You can't have a perfect— Where did the board do that? In the sentence that I just indicated. So if I don't agree with you that this sentence indicates a fact-finding by the board, that there are design trade-offs, and that either of these would amount to reasonable design choices, I find, against the government? No, I don't believe that's the only point that's in the government's favor, Your Honor. It's just one point. Why don't you tell me the other points, because this one is not persuasive to me. Right. So essentially what the board goes on to conclude— I mean, why aren't you pointing to the bottom of the page where they say the figure-four thing and then say, thus, petitioner's arguments? Isn't that—why are you not going there? I would get there eventually, Your Honor, but I think that's the— Well, you have 45 seconds left, so I don't know when your eventually is. I feel like I need to answer the questions that are asked me by the court, Your Honor. So I think that the next steps that the board quickly goes through are saying, we have this conflicting testimony, that there are two ways to do this. Oshio clearly discloses that one of the ways to accomplish getting plating in these desirable places is fully plate the lead frame. Oshio specifically teaches that, and then they say, just above where you were referencing, Your Honor, Oshio does not mention spot plating in digging the context of this disclosure. I realize that in the final paragraph, only the last sentence speaks at all about the words motivation to combine. It appears nowhere else in the proceeding. And in that sentence, in that paragraph, it says, figure-four of Oshio illustrates a device similar to that described in Park. Thus, we are persuaded. What do you think they're thus referred to, if not the preceding sentence? Because it's hard for me to imagine that thus referred to everything we said above about the conflicting expert testimony. I think it goes all the way back and includes that, Your Honor, because this entire part of the board's decision is about this single disputed limitation of Claim 17. And so they're saying this in light of this entire discussion where we have laid out the testimony and the facts, though only the last point of which is about figure-four and the similarity of the devices, we conclude, based on all of that, that Petitioner has demonstrated that a person of ordinary skill would have been motivated to combine the teachings of Park 697 in Oshio. And you don't think it's fair for me to say everything prior to this final paragraph discussing motivation is going to spot plating versus full coding? Because that's what it seems to me. It seems to me that the culmination of the paragraph prior to the motivation to combine paragraph is really going to whether or not Oshio discloses spot plating versus fully coding, and that finally accepting possibly that it's fully coding that last paragraph is the motivation to combine paragraph. That's the way I read the opinion. Is that an unreasonable read? I think that those questions are not as separate as Your Honor has just suggested, that they bleed together somewhat because the feature being taken from Oshio and applied to Park 697 is about the plating. And so it involves a question of why and how you do it, which pulls in that discussion about is it fully plated or not. They're not 100% separate questions. And I think particularly as you read through the board decision in the order I've indicated, even if every step of that process is not spelled out explicitly, that is you can follow the board's reasoning. And as this court has said invasive, that's sufficient to allow this court's review. As long as the court can see the reasoning and the pattern and the flow of logic that the board was following, that is sufficient. Any further? I'll just add a couple of very quick points with the court's forbearance. I'd just add that the discussion, as indicated in the government's brief, about the alternate embodiment in figures 18A and B, I think, confirms the understanding that Oshio teaches fully plating. And also just one point on the secondary considerations. He didn't address that, so I don't know why you would go there. But I would like you to say what you almost said and didn't. Where does the board address reasonable expectation of success? That's going to take more gymnastics than I feel like you're capable of. Go ahead. The words reasonable expectation of success are not in the board's opinion. I admit that, Your Honor. But I think it's the same thing. We went out on a limb with that one, huh? You look at the reasons for the board's discussion and the lack of argument on that specific point that needed to be rebutted, and you can see... Except remember the discussion you and I had earlier about what if the petitioner doesn't actually argue anything? Does the board still have an obligation? And you said yes? I do, Your Honor. And I fully admit that. As I said, my only point was that the length and detail of that discussion is going to... But they're zero. The length and detail is zero. As argued, and I'll just rely on the government's brief, but I think there's enough there to say... Where? Which place? I would point to the board's decision at 42 and appendix 48 as having the key points for supporting that conclusion. Page 48, which sentence would you say supports the conclusion there's this reasonable expectation of success in making the combination? The point that they are similar devices, that only the teaching from OSHO of plating the lead is being carried over. So it's not a wholesale merging of these two very disparate designs. It's just plating the lead and then otherwise keeping PARC the same. And that the board's conclusion that once you apply that fully plating the lead teaching, then PARC would practice the claimed limitation. And the other limitations are all undisputed. That goes to reasonable expectation of success, as well as that it was well-known and conventional to plate all surfaces as the board noted at the argument at 8, appendix 23, citing Dr. Shanfield's testimony at appendix 5, 92 to 95, paragraph 91. I sure wish the board had done more here, and I'm sure you do too at this point. Thank you very much for your argument. Let's hear from the other side. He's got a little bit of rebuttal time. Thank you, Your Honor. Thank you, Your Honors. I want to start with what you ended with on the reasonable expectation of success. There's nothing in the board's decision addressing reasonable expectation of success. They may not have said the words, but it's not very complicated. In fact, it would be the more natural result to plate the entire surface and not to sort of try to plate a part of it and not the rest. I mean, have you ever tried to paint half a wall? Would you have to tape it up and avoid doing the rest? I mean, it's the natural result. If the wall has a window in it, you wouldn't want to paint over the window. I mean, there are reasons why you selectively localized plate in this art. There's testimony with respect to that. And keep in mind that what they're plating with is gold. Yes, but there's no explanation. There's nothing in this record to suggest there would be any complication involved in plating the entire thing. That's the problem. I think they're, well, I would say in the record. Because you're talking about a reasonable expectation of success. There's no indication in this record whatsoever that there wouldn't be a reasonable expectation of success, assuming the references all disclose what the government says they disclose. Right, but there is plenty of evidence in the record that, absent the notches, which are part of the 250 invention, if you plated the entire surface, top and bottom, of that lead in Osho, you would get reduced adhesion, peel off, misalignment, and so on. And the fact is that that wasn't addressed and explained in the decision. I know. You're making an APA argument, and I'm not unsympathetic to it, but I've got to tell you, it results in no different outcome for your client. And so, I don't know, do I send it back and say, give a little more explanation when I feel like I can tell exactly what their explanation would be based on what they already wrote, but maybe they didn't just use the magic words? I mean, isn't that just a waste of time and money for everybody? Two points on that. We think that a remand in this case would be futile. I would cite the decision. Well, that's the only chance you have. IPR licensing. That's the only chance you have. I would cite the decision in IPR licensing with respect to that. But I want to make another point, which is, there is clear evidence in the record, which actually was not, I'll say, very much in dispute, that this art is complicated and that it's unpredictable. And it was especially important here with respect to motivation to combine and expectation of success and combining these references for the board to give us more than what they did in terms of explaining. Any time there is an APA notice-oriented deficit, we can't follow your logic in order to be able to review your actual fact findings. The only recourse is to vacate remand for an explanation of the logic. It's not to find in your favor because they didn't put enough detail. Okay. APA argument aside, but other reasons I explained, there's no substantial evidence that OSHO teaches plating all surfaces. I know, but I don't agree with you on that. Okay. So let's give a closing thought. Well, the other point I would make is that the board also made an error, factual and legal, with respect to the objective and dis-evidence here. Okay, but that wasn't touched upon. That was substantial. So we're going to have to skip over that for rebuttal purposes. I thank both counsel. The argument is taken under submission. Thank you.